# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Summer Boismier,

        Plaintiff,

v.

Ryan Walters,

        Defendant.

Case No. 23-CV-767-J

---

## DEFENDANT RYAN WALTERS' MOTION FOR SUMMARY JUDGMENT
## <u>WITH BRIEF IN SUPPORT</u>

David R. Gleason, OBA #31066
Moricoli Kellogg & Gleason, P.C.
One Leadership Square, Suite 1350
211 N. Robinson Ave.
Oklahoma City, OK 73102
Telephone: (405) 235-3357
Facsimile: (405) 232-6515
dgleason@moricoli.com
**COUNSEL FOR RYAN WALTERS**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................. 3

III. SUMMARY JUDGMENT STANDARD ............................................................................ 9

IV.  ARGUMENT AND AUTHORITY ................................................................................. 10

     1. The "actual malice" standard under New York Times Co. v. Sullivan, 376 U.S 254 (1964) is applicable ........................................................................................ 10

     a. Plaintiff's position as a high school teacher makes her a "public official" under Oklahoma law. ...................................................................................... 10

     b. Plaintiff injected herself into the public debate surrounding HB 1775 and the removal of certain books from Oklahoma schools ........................................ 11

     2. Plaintiff cannot prove Walters acted with "actual malice" .................................. 13

     3. The statementsThe statements made by Defendant are privileged ................... 14

     4. Plaintiffs claims are barred by the Governmental Tort Claims Act ................. 15

     5. Statements of opinion are not actionable in a defamation suit. .......................... 16

     6. Walters' statements fall within the fair comment privilege .............................. 20

V.  CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 255 (1986) ............................................................................ 10

*Garrison v. State of Louisiana*
379 US. 64, 76 (1964) ............................................................................. 12, 14

*Gengberg v. Porter*,
882 F.3d 1249, 1250 (10th Cir. 2018) ....................................................... 10

*Gertz v. Robert Welch, Inc.*
U.S. 323, 344 (1974) .............................................................................. 12, 19

*Greenbelt Cooperative Publishing Ass'n v. Bresler*,
398 U.S. 6, 10-11 (1970)882 F.3d 905 (10th Cir. 2018) ....................... 14, 18

*Herbert v. Oklahoma Christian Coalition, Inc.,*
1999 OK 90, ¶ 22 ................................................................................... 14, 19

*Johnson v. Corinthian TV Corp.,*
1978 OK 88, ¶ 7, 583 P.2d 1101 ........................................................... 11, 20

*Jurkowski v. Crawley,*
637 P.2d 56, 61 (Okla. 1981) ..................................................................... 14

*Letter Carriers v. Austin*
418 U.S. 264, 284 (1974) ............................................................................ 18

*Magnusson v. New York Times*,
2004 OK 53, ¶ 15 .............................................................................. 18, 19, 20

*Mitchell v. Griffen Television, LLC*
60 P.3d 1058, 1061 ..................................................................................... 15

*Miskovsky v. Okla. Publ. Co.*,
1982 OK 8, ¶ 30, 654 P.2d 587 ................................................................... 19

*New York Times v. Sullivan,*
376 U.S. 254 (1964) .............................................................................. 10, 11

*Peterson v. Grisham,*
594 F.3d 723 (10th Cir. 2010) .................................................................... 15

*Price v. Walters,*
 1996 OK 63, ¶ 26, 918 P.2d 1370................................................15, 18, 19

*Rosenblatt v. Baer*
 383 U.S. 75 (1966)................................................11

*Wilson v. City of Tulsa,*
 2004 OK CIV APP 44, ¶ 15, 91 P.3d 673 ................................................16

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*
 450 F.3d 1132, 1137 (10th Cir. 2006) ................................................12

*Wright v. Haas*
 1978 OK 109, ¶ 3, 586 P.2d 1093................................................13

**Statutes:**

Okla. Stat. tit. 12, § 95(A)(4) ................................................12

Okla. Stat. tit. 12, § 1443.1 ................................................15

Okla. Stat. tit. 51 § 152(7)(a)(1) ................................................16

Okla. Stat. tit. 51, § 152(12) ................................................16

Okla. Stat. tit. 51, § 152.1(A) ................................................16

Okla. Stat. tit. 70 § 24-157................................................2

Okla. Stat. tit. 74, § 10.3 ................................................16

**Rules:**

Fed. R. Civ. P. 56(c) ................................................10

Defendant Ryan Walters ("Walters") hereby moves this Court to enter an order granting summary judgment against Plaintiff, Summer Boismier ("Plaintiff"), on all claims asserted in her Complaint [Doc. 1].

## I.     INTRODUCTION.

Plaintiff was a sophomore English teacher at Norman High School.   Prior to the start of 2022-23 school year, Norman High School had instructed teachers to restrict student access to certain books to ensure compliance with state law – specifically Oklahoma House Bill 1775 (also known as "HB 1775").   In an act of protest Plaintiff covered her books with red paper with the message "Books the state doesn't want you to read." Plaintiff also provided her students with a QR code containing a link to the Brooklyn Public Library's "Books Unbanned" program.   After a concerned parent complained on the first day of the school year, Plaintiff was removed from the classroom and resigned a few days later. Plaintiff's removal from the classroom and her resignation were the subject of significant local, statewide, and national media coverage.

At the time, Walters was the Oklahoma Secretary of Education.   Walters, on his Oklahoma Secretary of Education letterhead, published a letter which was critical of Plaintiff's actions and called upon the Oklahoma State Board of Education to revoke Plaintiff's teaching certificate.   Plaintiff's Complaint asserts causes of action for defamation, false representation, slander and libel for statements made by Walters.

The public controversy surrounding Plaintiff was part of a larger ongoing political conversation that was being had at the time across Oklahoma surrounding HB 1775, which had been signed into law by Governor Stitt on May 7, 2021.   (H.B. 1775, 58th Leg., 1st

1

Sess. (Okla. 2021), https://www.sos.ok.gov/documents/legislation/58th/2021/1R/HB/1775.pdf). The Act, effective July 1, 2021, and now codified at 70 O.S. § 24-157, prohibited teachers from *inter alia* teaching certain concepts involving race and sex. Robust public debate followed the passage of HB 1775 and the Oklahoma State Department of Education's subsequent adoption of rules related thereto.

On July 28, 2022, just one month prior to Walter's statements concerning the Plaintiff, the Oklahoma State Department of Education penalized Tulsa and Mustang Public Schools for violations of HB 1775 resulting in continuing intense public discussion. *See* "Tulsa, Mustang penalties upheld as state board of education refuses to reconsider HB 1775 vote," *The Oklahoman*, August 26, 2022, available at https://www.oklahoman.com/story/news/education/2022/08/26/oklahoma-state-board-education-meeting-tulsa-mustang-public-schools-hb-1775-penalties-upheld /65418926007/. The debate concerning HB 1775 also centered on whether certain books were appropriate to include in school classrooms and libraries. In response to public criticism (including criticism from Walters), Tulsa Public Schools also removed two books – *Gender Queer* and *Flamer* – from school libraries. These books were widely criticized as being "pornographic." *See* "Superintendent Hofmeister, Secretary Walters and others respond to post about LGBTQ graphic novels," July 28, 2022, Fox23.com, available at: www.fox23.com/news/superindendent-hofmeister-secretary-walters-and-others-respond-to-post-about-lgbtq-grpahic-novels/article_82857803-8c88-5421-ba9a-1282475 cc472.html. This included a press release by Joy Hofmeister, the State Superintendent of Public Instruction on July 27, 2022,

in which she stated that the two books were "inappropriate, sexually explicit material. It's pornography that does not belong in any public school library." (Ex. 2).

Plaintiff was aware of the controversy surrounding these books as evidenced by her own August 12, 2022, post to Twitter (now X) in which she stated that "state leadership has spent the last year loudly labeling these books and their stories/perspectives as pornography." (Ex. 4). The QR code that Plaintiff provided to her students for the "Books Unbanned" program contained access to these same graphic and controversial books. Immediately upon her resignation Plaintiff injected herself into the broader discussion occurring across the state of Oklahoma surrounding HB 1775 and these books by providing a number of interviews to news outlets – both local and national – including FOX 25, *VICE News*, the *OU Daily*, CNN, *The Washington Post*, *Gothamist*, and perhaps others. Plaintiff was also the subject of a Fox News article dated August 29, 2022, titled "Oklahoma mom says former teacher should face 'criminal charges' over kids' access to 'pornographic' book." Available at: https://www.foxnews.com/us/oklahoma-mom-says-former-teacher-face-criminal-charges-kids-access-pornographic-book. Additionally, Plaintiff published an opinion piece in *The Oklahoman* on August 31, 2022, concerning HB 1775. By her actions, Plaintiff made herself a public figure surrounding the HB 1775 debate in general and in particular whether it is appropriate for public schools to provide sexually graphic books to students. As a public figure, Plaintiff must demonstrate that Walters acted with "actual malice" in order to succeed on any defamation claim.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS.

1.  In July of 2022 it was publicized that Tulsa Public Schools had removed the

books *Gender Queer* and *Flamer* from school libraries.  Ex. 1, Sean Murphy, "Tulsa Public Schools removes graphic books from library," *The Associated Press*, July 28, 2022, (Ex. 1).

2.   In a public statement from July 27, 2022, Joy Hofmeister, then Oklahoma Superintendent of Public Instruction, described the two books as "sexually explicit material" and "pornography that does not belong in any public school."  Ex. 2, Statement of Joy Hofmeister.

3.   At the beginning of the August 2022 school year, Plaintiff was employed as a sophomore English teacher at Norman High School.  (Ex. 3, Transcript of Testimony of Summer Boismier before the Oklahoma State Board of Education, June 21, 2023, p. 37, l. 2-8).

4.   On August 12, 2022, Plaintiff posted to her public Twitter (now X) account the following statement:

> HB 1775: Before and after | My [students] no longer have access to books by BIPOC, LGBTQ+, and/or gender non-conforming authors because state leadership has spent the last year loudly labeling these books and their stories/perspectives as pornography, as indoctrination.

Ex. 4, August 12, 2022, Twitter post.

5.   On the first day of the school semester, August 19, 2022, Plaintiff had posted in her classroom a QR code link to the Brooklyn Public Library's "Books Unbanned" program. (Ex. 3, Transcript, p. 38, l. 5-7; p. 39, l. 2-14).

6.   The "Books Unbanned" program includes access to the book *Gender Queer* and other "banned" books. (Ex. 3, Transcript, p. 43, l. 15-18).

7.   At the time that Plaintiff posted the QR code, she was aware of Walters public commentary on *Gender Queer*.   Posting the QR code to "Books Unbanned" was part of her reaction to that commentary. (Ex. 3, Transcript, p. 43, l. 19-24).

8.   The book *Gender Queer* includes graphic depictions and discussions of sex, oral sex, and masturbation. (Ex. 5, Excerpts from *Gender Queer*).

9.   In response to a complaint from a parent, Plaintiff was "removed" from her classroom by Norman Public Schools.  (Ex. 3, Transcript. p. 42, l. 24 – p. 43, l. 2).

10.   Plaintiff then resigned from her position.  (Ex. 3, Transcript. p. 43, l. 5-9).

11.   On August 23, 2022, Oklahoma City FOX 25 published a story about Plaintiff titled "NPS teacher resigns from district after sharing QR code for library access with class-room" on okcfox.com and in conjunction ran a story on its local Oklahoma City television broadcast also regarding the Plaintiff.   Available at: https://okcfox.com/news/local/norman-public-schools-nps-norman-high-school-teacher-summer-boismeir-house-bill-1775-hb1775-american-civil-liberties-union-aclu-first-amendment-critical-race-theories-crt-book-ban-oklahoma-state-board-of-education-race-sex-discrimination.   (Ex. 6).

12.  The article from FOX 25 contains the following quotes provided by Plaintiff:

> In response to unfounded calls from state leadership for widespread censorship, I did share a library-linked QR code with my students. Immediately after this, I was removed from my position and placed on leave.
>
> Teachers across the district have been told by administration to either remove or restrict student access to classroom library texts for fear of a potential accreditation downgrade associated with any perceived violations of HB 1775.
>
> Let me be absolutely clear: I place the primary responsibility for this chilling of free speech and free association at the feet of Ryan Walters, Governor Stitt, and their ilk at 23rd and Lincoln.

*Id.*

13.  On August 23, 2022, Plaintiff was the subject of an article in Gothamist, a website affiliated with New York Public Radio Station WNYC titled "Oklahoma teacher suspended after promoting Brooklyn Public Library's anti-censorship campaign."  Available at: https://gothamist.com/news/oklahoma-teacher-suspended-after-promoting-brooklyn-public-librarys-anti-censorship-campaign (access may require a free account signup). (Ex. 7).

14.  On August 24, 2022, Plaintiff gave a videotaped interview to Oklahoma City FOX 25 which lasted nearly 20 minutes, portions of which aired on the local news and were described in a written article titled "'I am a walking HB 1775 violation': Former Norman teacher discusses book ban controversy."  Available at: https://okcfox.com/news/local/summer-boismier-norman-public-schools-critical-race-theory-brooklyn-public-library-qr-code-house-bill-1775-oklahoma-teacher-resigned-education-books.  (Ex. 8).

15.  In the August 24, 2022, interview with FOX 25 Plaintiff stated:

> I am a walking HB 1775 violation.  And one of the sticking points between myself and my previous district was I would do it again in a heartbeat.  No regrets.  Would do it again.  Will do it again.

*Id.*

16.  On August 24, 2022, the OU Daily published an article about Plaintiff titled "Norman High School teacher resigns after accusations of violating HB 1775."  Available at: https://www.oudaily.com/news/norman-high-school-teacher-resigns-after-accusations-of-violating-hb-1775/article_61a5e982-23e3-11ed-89fa-63a4a1f17a95.html.  (Ex. 9).

17.   In the OU Daily article, Plaintiff is quoted as stating:

> HB 1775 has served its purpose. Educators in our state's public schools are now required to commit instructional malpractice in order to keep their jobs and feed their families.
>
> Make no mistake, the real victims here are Oklahoma public school students. This will not change until the voters of this state stop electing unqualified bigots to positions of power.

*Id.*

18.   Also on August 24, 2022, CNN ran a story about Plaintiff titled "An Oklahoma teacher says she resigned over a state law requiring teachers to censor books in classroom libraries."  Available at: https://www.cnn.com/2022/08/24/us/oklahoma-teacher-resigns-race-and-gender-law/index.html.  (Ex. 10).

19.   In the CNN article, it is reported that Plaintiff stated to CNN that she did in fact provide a QR code to her classroom with access to the Brooklyn Public Library's "Books Unbanned" program, and Plaintiff is quoted as stating:

> Me commenting on the climate of censorship and the chilling implications of a rejection of free speech and free association – me commenting on that is absolutely a political choice. I stand by that.

*Id.*

20.   Also on August 24, 2022, Plaintiff was the subject of an article in VICE News titled "This teacher gave students access to 'banned' books.  She was put on leave and resigned." Available at: https://www.vice.com/en/article/oklahoma-teacher-resigned-brooklyn-library-banned-books/.  (Ex. 11).

21.   In the VICE News article Plaintiff is quoted as stating:

> HB 1775 has created an impossible working environment for teachers and a devastating learning environment for students. For the 2nd year in a row, students at Norman High will be without a certified English teacher for a substantial amount of time. The fault for that lies with Governor Stitt and Republican state leadership.

*Id.*

22.	On August 25, 2022, Plaintiff was the subject of an article from *The Washington Post* titled "Teacher quits in protest after being punished for banned-books sign." Available at: https://www.washingtonpost.com/nation/2022/08/25/oklahoma-teacher-resigns/. (Ex. 12).

23.	In *The Washington Post* article Plaintiff is quoted as describing her school library as "a physical manifestation of an HB 1775 violation." *Id.*

24.	On August 26, 2022, Oklahoma City FOX 25 published a story about Plaintiff titled "Norman Public Schools parent says former teacher 'should have criminal charges'" and also aired a story about Plaintiff on FOX 25 Oklahoma City television. Available at: https://okcfox.com/news/local/nps-parent-says-former-teacher-should-have-criminal-charges-norman-public-schools-oklahoma-gender-queer-book-books-library-critical-race-theory-summer-boismier-sex-explicit-pornographic-pornography-senator-rob-standridge-laney-dicksion-criminal-charge. (Ex. 13).

25.	In regards to *Gender Queer* which the parent of one of Plaintiff's students identified as being on the "Books Unbanned" list the August 26, 2022, FOX 25 article quotes the parent as stating "This is pornographic material." *Id.*

26.	On August 31, 2022, *The Oklahoman* published an opinion piece by Plaintiff concerning HB 1775. (Ex. 14).

27.   On August 31, 2022, Walters posted two letters about Plaintiff on his Secretary of Education letterhead to his Twitter account.  (Ex. 15.  and Joint Status Report and Discovery Plan, Doc. 31, Stipulated Facts).

28.     At the time he made the statements, Walters believed that all statements in his August 31, 2022, letters were true.  (Ex. 16, Declaration of Ryan Walters).

25.     At the time he made the statements, Walters was the Oklahoma Secretary of Education.  (Joint Status Report and Discovery Plan, Doc. 31, Stipulated Facts).

26.     On September 1, 2022, Plaintiff republished a copy of Defendant Walters' letter to Plaintiff's public twitter account with the comment "No clerical errors detected." (Ex. 17).

27.     The Court's Scheduling Order [Doc. 32] established a January 5, 2025, deadline for Plaintiff to file a final list of witnesses in support of her claims.  Plaintiff has not filed a witness list.

28.     The Court's Scheduling Order [Doc. 32] established a January 20, 2025, deadline for Plaintiff to file a final list of exhibits in support of her claims.  Plaintiff has not filed an exhibit list.

## III.   SUMMARY JUDGMENT STANDARD.

"[S]ummary judgment is appropriate if the evidence shows that 'there is no genuine issue as to any material fact' and the party moving for summary judgment is entitled to judgment as a matter of law."  *Genberg v. Porter*, 882 F.3d 1249, 1250 (10th Cir. 2018) (citing Fed. R. Civ. P. 56(c)).

As discussed *infra*, because Plaintiff is a public figure, the *New York Times v. Sullivan*, 376 U.S. 254 (1964) standard will be applicable in this case. The *New York Times* standard requires the Plaintiff to meet a "clear and convincing" evidence requirement. On summary judgment, the Court must consider whether a jury could reasonably find for the plaintiff or defendant applying the appropriate evidentiary standard. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). This includes a determination of "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Id.* Plaintiff's burden in response to a properly supported motion for summary judgment is to "present evidence from which a jury might return a verdict in his favor." *Id.* at 257. "This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Id.* Plaintiff cannot meet her clear and convincing evidence requirement. This is especially true because since Plaintiff has not filed a timely witness or exhibit list or sought any extension of time from this Court, Plaintiff will have no evidence at trial.

## IV.    ARGUMENT AND AUTHORITY.

1.    **The "actual malice" standard under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) is applicable.**

   a.    **Plaintiff's position as a high school teacher makes her a "public official" under Oklahoma law.**

The Oklahoma Supreme Court in *Johnson v. Corinthian TV Corp.* 1978 OK 88, ¶ 7, 583 P.2d 1101 held that a high school teacher and coach was a public official within the test laid out in *Rosenblatt v. Baer*, 383 U.S. 75 (1966). In doing so, the Oklahoma Supreme

Court stated that "we can think of no higher community involvement touching more families and carrying more public interest than the public school system." *Id*. at ¶ 9. Because Plaintiff, at the time of her actions, was a public official, the *New York Times* actual malice standard is applicable. *Rosenblatt*, 383 U.S. at 86 ("Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and the *New York Times* malice standards apply.").

All of the alleged defamatory statements related to actions taken in Plaintiff's official capacity as a teacher. Criticism of public officials enjoys broad First Amendment protection. The Supreme Court has determined that with regards to a public official "anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character." *Garrison v. State of Louisiana*, 379 U.S. 64, 76 (1964); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974) ("[S]ociety's interest in the officers of government is not strictly limited to the formal discharge of official duties"). Here, the Defendant's actual and alleged comments all related to Plaintiff's activities in her classroom. As such, at the time of Plaintiff's actions, she was a public official as a matter of law and the *New York Times* actual malice standard is applicable.

### b. Plaintiff injected herself into the public debate surrounding HB 1775 and the removal of certain books from Oklahoma schools.

In *Gertz v. Robert Welch, Inc.* the Supreme Court held that an individual assumes public figure status when they "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." 418 U.S. 323, 345 (1974). By doing so, an individual "invite[s] attention and comment." *Id.* Whether an individual is a limited-purpose public figure is a question of law. *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1137 (10th Cir. 2006).

Plaintiff made herself a public figure by participating in numerous interviews regarding her departure from Norman Public Schools and her opposition to HB 1775 and its implementation between August 23, 2022, and August 31, 2022 – all prior to the first statements that Walters is alleged to have made on August 31, 2022.[1] Exs. 6-12. Word of Plaintiff's protest against HB 1775, providing access to the "Books Unbanned" list, and subsequent resignation, had received national attention <u>all prior to the statements of Walters</u>. Plaintiff's own statements in her FOX 25 interview that she was a "walking HB 1775 violation," had "no regrets," and "will do it again," thrust the subject of her qualifications and performance into the public sphere. (Undisputed Material Fact No. 12).

Plaintiff also made herself a public figure by the publication of her opinion piece in *The Oklahoman* on August 31, 2022 (Ex. 14) and her public Twitter (now X) posts. *See Wright v. Haas*, 1978 OK 109, ¶ 3, 586 P.2d 1093 (finding that the plaintiff "voluntarily injected himself into the vortex of the public controversy by writing his letter addressed to

---

[1] Defendant notes that the Complaint in this case was filed on August 30, 2023, and so any claims which might have arisen from statements made prior to August 30, 2022, would be barred by the 1-year statute of limitations contained in 12 O.S. § 95(A)(4).

the editor with the intent it be published.").   Plaintiff's article in *The Oklahoman* clearly indicates Plaintiff's opposition to HB 1775 and Plaintiff's opposition to the removal of certain books from public schools.   Plaintiff's article ends with "This November you have a choice to make for the future of our state and the state of our public schools: a politics of inclusion or exclusion."   The reference to "This November" is clearly a reference to the upcoming November election, and the impact which Plaintiff perceives that election will have on the Oklahoma public school system.   Thus, in addition to being a public official as a matter of law due to her status as a public-school teacher, by thrusting herself to the forefront of public controversy surrounding HB 1775 Plaintiff also made herself a public figure.

**2.    Plaintiff cannot prove Walters acted with "actual malice."**

In order to prove her defamation claims, Plaintiff must demonstrate "actual malice." In other words, Plaintiff must show that Defendant "knew or had reason to suspect that his publication was false."  *Herbert v. Oklahoma Christian Coalition, Inc.*, 1999 OK 90, ¶ 22 (citing *Herbert v. Lando*, 441 U.S. 153, 160, (1979)).  "The 'actual malice' standard to be met by the public figure plaintiff is a formidable one."  *Id.* at ¶ 19.  "'Actual malice' requires, for example, 'false statements made with [a] high degree of awareness of their probable falsity.'"  *Id.* (quoting *Garrison v. State of Louisianna*, 379 U.S. 64, 74 (1964)).

Mere negligence, falsity of the statements made, or even ill will is not enough. "Failure to conduct a thorough investigation is not a sufficient basis to establish actual malice."  *Herbert at* ¶ 19 (citing *Jurkowski v. Crawley*, 637 P.2d 56, 61 (Okla. 1981)). "Negligence is not enough to rise to the level of 'actual malice' and malice may not be

inferred simply from a showing that the publication was untrue." *Id*. Moreover, the "fact that the publisher failed to undertaken an investigation that would have been made by a reasonably prudent person is not enough." *Id*. at ¶ 21 (citing cases). Additionally, "[t]hat the publisher acted out of ill will, hatred or a desire to injure the official is not enough to establish actual malice." *Id*. at ¶ 20, (citing *Greenbelt Cooperative Publishing Ass'n. v. Bresler*, 398 U.S. 6, 10-11 (1970)). In short, Plaintiff's burden is to submit clear and convincing evidence from which a reasonable jury could conclude that Defendant made statements either knowing that such statements were false or had a high probability of being false.

In his declaration attached as Ex. 16, Walters states that he believed all statements about Plaintiff to be true at the time he made them. Plaintiff has no evidence (and especially not clear and convincing evidence) that Walters knew any statements were false or that they had a high probability of being false. This point is self-evident in that Plaintiff has failed to identify a single witness or exhibit she plans to introduce at trial in this case. It is Plaintiff's burden to respond to this motion with evidence that Walters knew his statements were false or had a high probability of being false. If Plaintiff cannot produce that evidence, this Court must grant summary judgment in favor of Walters.

3.     **The statements made by Defendant are privileged.**

A defamation claim in Oklahoma requires an "unprivileged publication." *Mitchell v. Griffen Television, LLC*, 60 P.3d 1058, 1061. Therefore, if the alleged statements made by Walters were privileged, Plaintiff has no cause of action for defamation. All statements made by Walters were privileged under 12 O.S. § 1443.1. The issue of whether a statement

is privileged under 12. O.S. § 1443.1 is a question of law. *Price v. Walters*, 1996 OK 63, ¶ 26, 918 P.2d 1370.

First, all statements made and alleged to have been made by Walters are privileged under 12 O.S. § 1443.1 as "criticisms upon the official acts of any and all public officers." As discussed *supra*, Oklahoma law recognizes that teachers are public officials. Clearly the statements which Walters is alleged to have made are criticism about Plaintiff's conduct in the classroom and the discharge of her official duties. *See Peterson v. Grisham*, 594 F.3d 723 (10th Cir. 2010) (dismissing claims for defamation and false light brought by a district attorney, former police officer, and former criminologist based on 12 O.S. § 1443.1). As such, these statements are privileged and cannot form the basis of a defamation claim.

Second, all statements were privileged under 12 O.S. § 1443.1 as being made "In the proper discharge of an official duty." At the time the statements were made Walters was the Oklahoma Secretary of Education which is an executive cabinet level position under 74 O.S. § 10.3 and 70 O.S. § 3-118. Pursuant to 70 O.S. § 3-118 the Secretary of Education is given a wide berth of duties over the public schools in Oklahoma. Part of those duties include making "reports to the public concerning these matters whenever appropriate." *Id*. As such, the statements by Walters concerning Plaintiff's fitness for teaching were within the scope of his official duties and are therefore privileged under 12 O.S. § 1443.1.

**4.    Plaintiff's claims are barred by the Governmental Tort Claims Act.**

The Oklahoma Governmental Tort Claims Act ("OGTCA") provides that all State of Oklahoma employees acting within the scope of their employment are immune from liability for torts. 51 O.S. § 152.1(A). The term "employee" encompasses appointed officers. 51 O.S. § 152(7)(a)(1). As Oklahoma Secretary of Education, Walters was an "appointed officer." A claim for defamation falls within the OGTCA. *See Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 15, 91 P.3d 673. The OGTCA denies "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority." 51 O.S. § 152 (12). As stated in Walters Declaration, he believed all statements to be true at the time that he made them. Therefore, Walters' statements were made in "good faith." Plaintiff has no evidence that Walters knew the statements were false or that Walters entertained serious doubts about their truth.

**5. Statements of opinion are not actionable in a defamation suit.**

Plaintiff's Complaint alleges that Defendant made the following statements, each of which is an opinion and thus cannot serve the basis of a defamation or false light claim:

(i)     Plaintiff "provid[ed] access to…pornographic material." Ex. 15.

(ii)    "Plaintiff caused harm and shame to the entire profession of teachers by 'sexualizing her classroom.'" Doc. 1, p. 4, ¶ 14(c).

(iii)   "That Plaintiff was morally unfit to teach." *Id*., p. 7, ¶ 25(b).

(iv)    "That Plaintiff represented a danger to minor children." *Id*., p. 7, ¶ 25(e).

Whether the book *Gender Queer* constitutes "pornographic material" requires a value determination and is, therefore, an opinion. A review of the content of the book demonstrates that the book contains sexually graphic imagery upon which the characterization as "pornographic" is reasonable and, if the Court determines this is a statement of fact, substantially true. And the opinion that *Gender Queer* is pornographic was publicly shared by others at the time. Other state officials, including Superintendent of Public Instruction Joy Hofmeister, had publicly called the book pornography. (Undisputed Material Fact No. 2). A parent of one of Plaintiff's students also called the book "pornography" in an article published prior to Walters' statements. (Undisputed Material Fact No. 25).

Walters' statements regarding "pornographic material" also must be viewed in the context of the broader political discussion concerning the removal of these books from school libraries. Since there had been a recent discussion regarding the removal of these books from Tulsa Public Schools, the statements would be seen by the public as relating to the same types of books. The Plaintiff's own Twitter (now X) post on August 12, 2022, acknowledged that the books in her school library had been labeled as pornography – evidencing that without a doubt Plaintiff was aware of the public controversy surrounding these books. (Ex. 4). The statements by Walters also presume that the reader is already familiar with the Plaintiff's situation due to the widespread news coverage she had received. In context, it is clear that the statements regarding "pornographic materials" are non-actionable "rhetorical hyperbole" which is protected by the First Amendment. *Greenbelt Co-Op. Publ. Assn. Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (holding that the word "black-

mail" was used as "rhetorical hyperbole" and therefore was protected by the First Amendment); *see also Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (holding that the word "traitor" when used "in a loose, figurative sense" was an opinion and not a fact); *Magnusson v. New York Times Co.*, 2004 OK 53, ¶ 15 ("[E]xaggerated criticisms [are] the type of statements that our society, interested in free and headed debate about matters of social concern, has chosen to protect").  Here, the word "pornographic" was used to express Walters' (and others) strong opposition to the sexually graphic nature of the books, and in context, any reasonable reader would have understood it in that manner.

The remainder of the statements alleged to have been made by Walters are clearly opinion.  The Court will note that alleged statements (ii) – (iv) are not contained in the August 31, 2022, letter or corrected letter attached as Ex. 14.  The Complaint does not allege where or when these statements were supposedly made.  Any statements about whether Plaintiff brought shame on the profession or was morally unfit to teach are "judgment statements" which are opinions – not fact – and are therefore not actionable.  A defamation claim will not lie for a statement of opinion.  *Price v. Walters*, 1996 OK 63, at ¶ 34, 918 P.2d 1370 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)) ("Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."); *see also Miskovsky v. Okla. Publ. Co.*, 1982 OK 8, ¶ 30, 654 P.2d 587 (holding that a "judgment statement in which the maker of the same expresses his views" is "opinionative and not factual in nature.").  Moreover, these statements too

are clearly "rhetorical hyperbole." Whether a statement is one of fact or opinion is a question of law for the Court. *Price,* 1996 OK 63, at ¶ 35.

In this case, any statements that Plaintiff was morally unfit to teach, brought shame and harm to the entire profession, and was a danger to minor children are clearly judgmental statements and opinion – not statements of fact. In *Herbt v. Oklahoma Christian Coalition, Inc.*, the Oklahoma Supreme Court found that the statement that a candidate for office "supports…minors' access to pornography in libraries" was a non-actionable judgmental statement. 1999 OK 90, ¶ 15, 992 P.2d 322. Similarly, any statement that Plaintiff "sexualiz[ed]" her classroom by encouraging students to obtain banned books (which did in fact contain images and content that was sexual in nature) is clearly a judgmental statement and also privileged. *See Magnusson v. New York Times Co.*, 2004 OK 53, ¶ 13, 98 P.3d 1070 ("Statements about an individual which cannot be proven 'true' or false,' because they are opinions or conclusions based on a review of the individual's actions are privileged."); *see also id*. at ¶ 14 ("[W]here the tone of the broadcast is pointed, exaggerated and heavily laden with emotional rhetoric and moral outrage, listeners are put on notice to expect speculation and personal judgment."). The tone of Walters' letter is clearly laden with moral outrage and emotional rhetoric. Therefore, any reader would be on notice to expect the personal judgment of Walters. As judgmental statements any such statements cannot form the basis of a defamation claim. The Court should determine as a matter of law that these are statements of opinion and thus are not actionable for defamation purposes.

### 6. Walters' statements fall within the fair comment privilege.

Oklahoma recognizes the common law defense of fair comment. *Magnusson v. New York Times Co.*, 2004 OK 53, ¶¶ 9-11. Under the fair comment defense "a statement is generally privileged when it: 1) deals with a matter of public concern; 2) is based on true or privileged facts; and 3) represents the actual opinion of the speaker, but is not made for the sole purpose of causing harm." *Id*. at ¶ 11.

The Oklahoma Supreme Court has held that matters dealing with the public-school system are matters of public concern. *Johnson v. Corinthian TV Corp.* 1978 OK 88, ¶ 9, 583 P.2d 1101. In this case, the facts upon which Walters' statements were based – i.e., that Plaintiff encouraged her students to access the "Books Unbanned" program which contained the books *Flamer* and *Gender Queer* – are unquestionably true. The opinion that the materials on the "Books Unbanned" program are pornographic in nature is the true opinion of Walters. (Ex. 16, Declaration of Walters). And these statements were not made for the sole purpose of causing harm to Plaintiff. (*Id*.). Therefore, Walters' statements that the books in question were "pornographic" are privileged.

## V. CONCLUSION.

Wherefore, premises considered, Walters respectfully requests the Court grant him summary judgment on all claims in Plaintiff's Complaint, including a finding that Plaintiff is a public figure and that the "actual malice" standard set forth in *New York Times* is applicable to Plaintiff's claims, together with such other and further relief as the Court determines is just and equitable.

Respectfully Submitted,

*/s/David R Gleason*
David R. Gleason, OBA #31066
Moricoli Kellogg & Gleason, P.C.
One Leadership Square, Suite
1350 211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-3357
Facsimile: (405) 232-6515
dgleason@moricoli.com
**COUNSEL FOR RYAN WALTERS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 3rd, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/ David R. Gleason*